1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GARRY P. WATSON,

11            Plaintiff,                    No. CIV S-06-1475 LKK EFB P

12        vs.

13   J. TORRUELLA, et al.,

14            Defendants.              <u>ORDER</u>

15   _____/

16        Plaintiff, a state prisoner proceeding pro se, brought a civil rights action pursuant to 42

17   U.S.C. § 1983. Plaintiff alleges violation of his Eighth Amendment rights by Defendants Drs.

18   Torruella, Galloway, and Milliman. Plaintiff also alleges violations of state law arising out of the

19   same allegedly unconstitutional actions and failures to act of Defendants. The matter was

20   referred to a United States Magistrate Judge pursuant to Eastern District of California local rules.

21        Defendants moved for summary judgment on Plaintiff's § 1983 claim alone, and United

22   States Magistrate Judge, Edmund F. Brennan, issued Findings and Recommendations

23   recommending this court grant Defendants' motion for summary judgment. These findings and

24   recommendations were served on the parties and contained notice that the parties may file

25   objections within twenty days. Plaintiff filed objections to the findings and recommendations. In

26   accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 72-304, this court

1

1  has conducted a de novo review of the case.

2  **I. BACKGROUND**

3     The court accepts the magistrate's findings of fact.[1]  In January 2002, Plaintiff sought

4  treatment of a lesion on his thumb from Defendant Dr. Torruella. Believing the lesion to be

5  caused by a bacterial infection, Dr. Torruella prescribed triple antibiotic ointment. Decl. Of J.

6  Torruella, M.D. in Support of Defendants' Motion for Summary Judgment/Summary

7  Adjudication ("Torruella Decl.") at ¶¶ 4a-b. In February 2002, Dr. Torruella again treated

8  Plaintiff. During this visit, Plaintiff informed Dr. Torruella that he has had the condition for

9  about one year, and Dr. Torruella observed that the lesion had worsened. Id. at ¶ 4c. Dr.

10  Torruella, again believing the lesion was caused by a bacterial infection, prescribed an oral

11  antibiotic. In May 2003, Plaintiff again sought treatment of the thumb from Dr. Torruella.

12  Plaintiff complained that the lesion was causing him pain. Still believing that a bacterial

13  infection caused Plaintiff's lesion, Dr. Torruella prescribed him seven days of Motrin. Id. at ¶ 4d.

14     In November 2003, Plaintiff claims he sought treatment for his thumb from Defendant

15  Dr. Milliman. Decl. of James E. Daly, D.O., M.S., Retired, in Support of Opposition to Motion

16  for Summary Judgment ("Daly Decl.") at ¶ 9. Dr. Milliman does not recall treating Plaintiff at

17  this time. Decl. of J. Milliman, M.D. in Support of Defendants' Motion for Summary

18  Judgment/Summary Adjudication ("Milliman Decl.") at ¶ 4d. During this alleged visit, Dr.

19  Milliman told Plaintiff that the lesion on his thumb was a wart and that he should learn to live

20  with it. Daly Decl. at ¶ 9. As a result, Plaintiff did not seek any further treatment until May 2004.

21  Id. at ¶ 10.

22     In May 2004, Defendant Dr. Galloway treated the lesion on Plaintiff's thumb. He

23  believed Plaintiff suffered from a fungal infection, and consequently, prescribed an anti-fungal

24
25     [1] The findings and recommendations do not include Plaintiff's alleged treatment by Dr. Milliman in November 2003. Plaintiff has submitted evidence of this treatment, and thus, the court will consider this evidence in addition to the medical visits described in the findings and
26  recommendations.

1    creme for Plaintiff. Decl. Of R. Galloway, M.D. in Support of Defendants' Motion for Summary

2    Judgment/Summary Adjudication ("Galloway Decl.") at ¶¶ 4b-c. Two months later, in July

3    2004, Dr. Galloway again treated Plaintiff's thumb, which did not respond to the anti-fungal

4    creme. Dr. Galloway believed that a foreign body had entered Plaintiff's thumb, and was causing

5    what he thought to be an infection. Id. at 4e. Dr. Galloway referred Plaintiff to a surgeon to

6    conduct a second opinion and perform a wedge excision of a foreign body or a biopsy as the

7    surgeon saw fit. Id.

8          In November 2004, Plaintiff again sought treatment from Dr. Milliman. Plaintiff

9    informed Dr. Milliman that he had suffered from the lesion on his thumb for at least one to two

10   years. Milliman Decl. at ¶ 4a. Dr. Milliman believed that Plaintiff suffered from a chronic fungal

11   infection with a secondary bacterial infection. Id. at ¶ 4c. To treat this infection, Dr. Milliman

12   prescribed a three week supply of bandaids and antibiotic creme. Id. Dr. Milliman planned to see

13   Plaintiff in three weeks to determine whether oral anti-fungal medication would be appropriate.

14   Id.

15         In February 2005, Plaintiff had nail bed surgery in which a biopsy was taken of his thumb

16   lesion. Am. Compl. at § IV. The result of the biopsy was that it demonstrated that Plaintiff

17   suffered from squamous cell carcinoma, a type of cancer. Id. Because the February surgery did

18   not completely excise the cancer, Plaintiff underwent surgery again in June 2006, to remove the

19   residual cancer cells. Id. Plaintiff continues to experience tenderness, swelling and pain in his

20   thumb, and believes the cancer may have spread to other parts of his body. Id.

21   **II. STANDARD FOR A FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT**

22         Summary judgment is appropriate when it is demonstrated that there exists no genuine

23   issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

24   Fed. R. Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor

25   Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995).

26         Under summary judgment practice, the moving party

3

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Secor Ltd., 51 F.3d at 853.

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; see also First Nat'l Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir. 1998).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Ass'n of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992)

4

1  (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

2  1987)), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

3  return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; see also Cline v. Indus.

4  Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 1999).

5          In the endeavor to establish the existence of a factual dispute, the opposing party need not

6  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed

7  factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

8  truth at trial."  First Nat'l Bank, 391 U.S. at 290; see also T.W. Elec. Serv., 809 F.2d at 631.

9  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in

10  order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed.

11  R. Civ. P. 56(e) advisory committee's note on 1963 amendments); see also Int'l Union of

12  Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1405

13  (9th Cir. 1985).

14          In resolving the summary judgment motion, the court examines the pleadings,

15  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

16  any.  Rule 56(c); see also In re Citric Acid Litigation, 191 F.3d 1090, 1093 (9th Cir. 1999).  The

17  evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all

18  reasonable inferences that may be drawn from the facts placed before the court must be drawn in

19  favor of the opposing party, see Matsushita, 475 U.S. at 587 (citing United States v. Diebold,

20  Inc., 369 U.S. 654, 655 (1962) (per curiam)); See also Headwaters Forest Def. v. County of

21  Humboldt, 211 F.3d 1121, 1132 (9th Cir. 2000).  Nevertheless, inferences are not drawn out of

22  the air, and it is the opposing party's obligation to produce a factual predicate from which the

23  inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45

24  (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

25          Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

26  show that there is some metaphysical doubt as to the material facts. . . . Where the record taken

5

1  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
2  'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

### III. ANALYSIS

4  Defendants' now move for summary judgment on Plaintiff's § 1983 claim for violation
5  of his Eighth Amendment rights with respect to his medical treatment and diagnosis while
6  incarcerated at Folsom State Prison in Repressa, California and Mule Creek State Prison in Ione,
7  California.

8  While Defendants raised state law defenses in their Answer to Plaintiff's Amended
9  Complaint, Defendants did not move for summary judgment on any state law claims. As such,
10  the findings and recommendations only addressed Plaintiff's federal claim. Moreover, because
11  there were no motions on the pleadings, the court has not had an opportunity to review Plaintiff's
12  claims until this motion. Thus, as an initial matter, the court must determine the plaintiff's
13  claims.  The court must liberally construe a pro se plaintiff's complaint "[b]ecause the pro se
14  litigant is far more prone to making errors in pleading than the person who benefits from the
15  representation of counsel." <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1055 (9th Cir. 1991) (internal
16  quotations omitted).  Upon such a liberal review of Plaintiff's complaint, the court concludes that
17  Plaintiff brought both a federal claim under § 1983 for violation of the Eighth Amendment and a
18  state claim for medical malpractice, <u>see, e.g.</u>, <u>Avivi v. Centro Medico Urgente Medical Center</u>,
19  159 Cal. App. 4th 463, 468 n.2 (2008), against all Defendants. Plaintiff brings this state claim
20  both for monetary and injunctive relief.

21  Given that Defendants may have been unaware of the scope of Plaintiff's claims until this
22  order, the court instructs the magistrate judge to allow Defendants to move for summary
23  judgment on Plaintiff's claim for medical malpractice as well as to reopen discovery, as
24  necessary, upon request of the parties.

25  **A.      Eighth Amendment Claim**

26  Plaintiff brings a § 1983 claim for violation of the Eighth Amendment in his medical

1   treatment against Defendants. Defendants argue that he cannot make a showing sufficient to

2   establish the existence of an Eighth Amendment violation.

3        In Estelle v. Gamble, the Supreme Court held that an inmate making a Eighth

4   Amendment claim based on prison medical treatment must show "deliberate indifference to

5   serious medical needs." 429 U.S. 97, 104 (1976). The Ninth Circuit determines whether such a

6   showing has been met based on a two part test: The plaintiff must first "show a serious medical

7   need by demonstrating that failure to treat a prisoner's condition could result in further

8   significant injury or the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d

9   1091, 1096 (9th Cir. 2006) (internal quotations omitted). Such injuries include (1) those that "a

10  reasonable doctor or patient would find important and worthy of comment or treatment; (2) the

11  presence of a medical condition that significantly affects an individual's daily activities; [and]

12  (3) the existence of chronic and substantial pain." McGuckin v. Smith, 974 F.2d 1050, 1059-60

13  (9th Cir. 1991).

14       After making a showing of a serious medical need, the plaintiff must show that "the

15  defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. This

16  requirement is "less stringent in cases involving a prisoner's medical needs than in other cases

17  involving harm to incarcerated individuals because '[the] State's responsibility to provide

18  inmates with medical care ordinarily does not conflict with competing administrative concerns.'"

19  McGuckin, 974 F.2d at 1060 (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992). Accordingly,

20  the Ninth Circuit has instructed courts to consider two separate elements when determining

21  whether defendants were deliberately indifferent: First, the plaintiff must show "a purposeful act

22  or failure to respond to a prisoner's pain or possible medical need." Jett, 439 F.3d at 1096. This

23  element "may be shown by the way in which prison physicians provide medical care." Id.

24  Plaintiff, however, must be able to show that Defendants were subjectively aware of the risk of

25  serious harm. Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). Subjective awareness

26  "may be shown by circumstantial evidence where the facts are sufficient to demonstrate that a

7

1   defendant actually knew of a risk of harm." <u>Lolli v. County of Orange</u>, 351 F.3d 410, 421 (9th

2   Cir. 2003). Second, the plaintiff must show that he was harmed by the indifference. <u>Jett.</u>, 439

3   F.3d at 1096.

4          Plaintiff argues in opposition to the magistrate's findings and recommendations that he

5   has presented sufficient evidence to establish that Defendants were deliberately indifferent to his

6   need for diagnosis and treatment of the cancerous growth on his thumb.[2] For the reasons below,

7   the court concludes that Plaintiff has presented sufficient evidence for a reasonable jury to decide

8   that Defendants were deliberately indifferent to his medical needs. Thus, Defendants' motion for

9   summary judgment must be denied.

10          **A.    Dr. Torruella**

11          The findings and recommendations concluded that Plaintiff failed to present sufficient

12   evidence to establish a genuine issue of material fact as to whether Dr. Torruella was deliberately

13   indifferent in his treatment of Plaintiff's thumb. In this court's review, however,  the submitted

14   evidence, viewed in the light most favorable to the Plaintiff, is sufficient to demonstrate a triable

15   issue of fact with respect to whether Dr. Torruella was deliberately indifferent to Plaintiff's

16   medical needs.

17          Between January 2002 and May 2003, Dr. Torruella treated Plaintiff's thumb. During this

18   time, Dr. Torruella never performed differential diagnosis nor collected any cultures of the

19   inflamed area of Plaintiff's thumb. Daly Decl. at ¶¶ 3-4. Dr. Torruella treated Plaintiff with

20   antibiotic cream and oral antibiotics. Torruella Decl. at ¶¶ 4b-c. Plaintiff's condition worsened

21   throughout this time period. Daly Decl. at ¶ 4. Finally, on May 28, 2003, Plaintiff again sought

22   treatment from Dr. Torruella, only to receive a prescription for Motrin. Decl. of Dr. Torruella, ¶

23   4d. Dr. Torruella states that he believed that Plaintiff's thumb was infected, and thus provided

24

25          [2]  Defendants only argue that Plaintiff will not be able to show that they were deliberately
    indifferent. Accordingly, it is undisputed whether Plaintiff's cancer constitutes a serious medical
26   need.

8

1    adequate medical treatment. Id. at 4b-d.

2         Plaintiff has, however, presented expert evidence casting doubt on whether Dr. Torruella

3    was subjectively unaware of the risk his treatment of Plaintiff posed. Specifically, Plaintiff's

4    witness concludes that (1) Dr. Torruella "grossly ignored standard diagnostic procedure[s in

5    failing to seek out the cause] of Mr. Watson's worsening medical malady," Daly Decl. at ¶ 5; (2)

6    Dr. Torruella's treatment of Plaintiff was never "consistent with the standards of community

7    medical care or in compliance with CDC quality [of] care standards," Id. at ¶ 6; and (3) Dr.

8    Torruella's failure "to provide proper medical care and standard diagnostic procedures to

9    determine why Mr. Watson's right thumb lesion continued to deteriorate" constitutes gross

10   medical negligence, Id. at ¶ 8. The findings and recommendations conclude that this expert

11   testimony fails to provide sufficient basis for a claim of deliberate indifference because "gross

12   negligence . . . does not suffice" to support a claim of deliberate indifference. Wood v.

13   Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). The court, however, is not bound by the legal

14   conclusions of Plaintiff's expert witness, but rather considers whether his medical conclusions

15   constitute a sufficient basis for a violation of the Eighth Amendment. Courts may consider

16   circumstantial evidence to determine whether Dr. Torruella was subjectively aware of the risk

17   his treatment of Plaintiff caused. Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003). A

18   reasonable jury could conclude, based on Dr. Daly's testimony, that Dr. Torruella was aware of

19   the standard operation and diagnostic procedures for his medical practice. Moreover, a jury

20   could conclude that Dr. Torruella was aware of his employer's standards, which, according to

21   Dr. Daly, required Dr. Torruella to follow certain diagnostic procedures when presented with

22   patients like the Plaintiff. If a jury were to conclude that Dr. Torruella was aware of these

23   standards, and of the risks associated with not following these standards, and nonetheless

24   decided to treat Plaintiff below the standards, it could conclude that Dr. Torruella was

25   deliberately indifferent to Plaintiff's medical needs. Thus, Plaintiff has provided sufficient

26   evidence that Dr. Torruella violated the Eighth Amendment in his treatment of Plaintiff.

1 ////

2 **B.    Dr. Galloway**

3 The findings and recommendations similarly recommend that plaintiff has not provided

4 sufficient evidence that Dr. Galloway was deliberately indifferent to his medical needs. Dr.

5 Galloway treated Plaintiff for two months, from May 2004 through July 2004. Galloway Decl. at

6 ¶¶ 4a, 4d. On Plaintiff's first visit, Dr. Galloway prescribed antifungal creme for Plaintiff's

7 thumb believing that he had a fungal infection. Id. at ¶ 4b. Plaintiff's condition continued to

8 worsen. Id. at ¶ 4d. Dr. Galloway then referred Plaintiff to a surgeon for an excision of part of

9 Plaintiff's thumb believing that a foreign object had become embedded in the area. Id. at ¶ 4e.

10 Dr. Galloway states that he believed that the surgeon would conduct a biopsy if he determined it

11 was appropriate. Id.

12 Plaintiff's expert similarly concludes that Dr. Galloway's treatment of Plaintiff was not

13 "consistent with community medical care standards or compliant with CDC quality care

14 standards." Daly Decl. at ¶ 14. Dr. Daly supports this medical finding based upon Dr.

15 Galloway's failure to conduct any diagnostic testing of Plaintiff's "grossly deformed right

16 thumb." Id. at ¶ 11. While not explicitly stated, it appears that Dr. Daly based this conclusion in

17 part upon a presumption that Dr. Galloway was aware that Plaintiff's prior medical history,

18 including Dr. Torruella's treatment of the thumb condition for over three years.[3] A reasonable

19 jury could find that Dr. Galloway was subjectively aware of the risk of failing to run diagnostic

20 tests for a three-year old lesion that has not responded to medication: Dr. Daly's testimony

21 supports a conclusion that Dr. Galloway was aware of the standards of medical care required by

22 the prison system. His testimony also supports a conclusion that these standards required Dr.

23 Galloway to perform or order diagnostic tests when presented with a lesion that did not respond

24 to medication for over three years. As such, a reasonable jury could conclude that Dr. Galloway

25

26 [3] A failure to consult plaintiff's medical records, might, itself, demonstrate deliberate
indifference.

1  was subjectively aware of Plaintiff's need for diagnostic tests, yet nonetheless failed to perform

2  or prescribe them. Thus, Plaintiff has provided sufficient evidence that Dr. Galloway violated his

3  Eighth Amendment rights.

4      **C.    Dr. Milliman**

5      Finally, the findings and recommendations conclude that plaintiff has failed to provide

6  sufficient evidence that Dr. Milliman was deliberately indifferent to his medical needs. Plaintiff

7  first sought treatment of his thumb by Dr. Milliman in November 2003.[4] Plaintiff claims that in

8  his first visit with Dr. Milliman, in 2003, Dr. Milliman instructed him that "the lesion on his

9  right thumb was a 'wart' and that Mr. Watson needed to learn to live with it." Daly Decl. at ¶ 9.

10  Consequently, Plaintiff did not seek medical help for about five months, when he first saw Dr.

11  Galloway. Id. at ¶ 10. In November 2004, Plaintiff again sought treatment from Dr. Milliman. In

12  this visit, Plaintiff told Dr. Milliman of his ongoing condition, and that he has been seeking

13  treatment from many doctors over some years. Milliman Decl. at ¶ 4a. Dr. Milliman concluded

14  that Plaintiff suffered from a fungal infection with a likely bacterial secondary infection. Id. at ¶

15  4b. He ordered that Plaintif be given Band-Aids and triple antibiotic ointment for three weeks,

16  after which he would decide whether he should prescribe an oral anti-fungal medication. Id. at ¶

17  4c. Dr. Milliman also refused to refill Plaintiff's prescription for pain medication for his thumb.

18  Daly Decl. at ¶ 18. In his report concerning this medical visit, Dr. Milliman reviewed the history

19  of Plaintiff's complaints and treatment of his thumb lesion. Id.

20      Dr. Daly also concludes that Dr. Milliman's treatment of Plaintiff was not "consistent

21  with the standards of community medical care or in compliance with CDC quality care

22  standards." Daly Decl. at ¶ 20. He bases this conclusion on Dr. Milliman's instructions to

23  Plaintiff to learn to live with the lesion on his thumb in 2003 and his failure to refill Plaintiff's

24  pain medication in 2004. As with Drs. Torruella and Galloway, a reasonable jury could conclude

25
26      [4] Dr. Daly indicates the first visit was in November 2003. Daly Decl. at ¶ 9. Dr. Milliman indicates the first visit was in November 2004. Milliman Decl. at ¶ 4a.

1   that Dr. Milliman was aware of the relevant prison standards of medical treatment and his non-

2   compliance with such standards by not only failing to diagnose Plaintiff's thumb lesion, but also

3   explicitly discouraging Plaintiff from seeking treatment. Moreover, substantial evidence exists to

4   support that Dr. Milliman was aware of Plaintiff's ongoing thumb condition and that such

5   condition has been unresponsive to medication as Dr. Milliman summarized the history of

6   Plaintiff's treatment in his report. Similarly, a reasonable jury could conclude that Dr. Milliman

7   was aware of the pain Plaintiff's thumb lesion caused, yet nonetheless refused to provide him

8   with pain medication. In so doing, Plaintiff could establish that Dr. Milliman was deliberately

9   indifferent to Plaintiff's medical needs. Thus, Plaintiff has provided sufficient evidence to

10  sustain his § 1983 claim against Dr. Milliman.

11  **B.    Qualified Immunity**

12          Defendants have also argued that they are entitled to qualified immunity because

13  reasonable physicians with the same knowledge of Plaintiff's condition could have believed that

14  their behavior was lawful. "The doctrine of qualified immunity protects government officials

15  'from liability for civil damages insofar as their conduct does not violate clearly established

16  statutory or constitutional rights of which a reasonable person would have known.'" Pearson v.

17  Callahan, 129 S.Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). It

18  is clearly established that an inmate possesses an Eighth Amendment claim based on prison

19  medical treatment where he shows deliberate indifference to his serious medical needs. See, e.g.,

20  Estelle v. Gamble, 429 U.S. 97 (1976); Jett v. Penner, 439 F.3d 1091 (9th Cir. 2006); McGuckin

21  v. Smith, 974 F.2d 1050 (9th Cir. 1991). Thus, Defendants are not entitled to qualified immunity.

22                              **IV. CONCLUSION**

23          For the reasons stated above, the court DENIES Defendants' motion for summary

24  judgment, Doc. No. 29.

25          The court orders that the magistrate judge allow Defendants an opportunity to move for

26  summary judgment on Plaintiff's medical malpractice claim, and to reopen discovery, as

1   necessary, for the motion.

2          The court also orders that the magistrate judge seek counsel to be appointed for Plaintiff.

3          IT IS SO ORDERED.

4          DATED: October 6, 2009.

5                                              _____
                                               LAWRENCE K. KARLTON
6                                              SENIOR JUDGE
                                               UNITED STATES DISTRICT COURT
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26